MANSFIELD, Justice (concurring in part and dissenting in part).
I concur in parts III.A and III.B of the court's opinion and in part III.C.2's conclusion that Iowa's sex offender registration requirements are not unconstitutional as applied to juveniles. However, I cannot join much of the discussion in part III.C.1.
We have held that Iowa's sex offender registration laws do not constitute punishment under either the United States or the Iowa Constitutions. See Formaro v. Polk County , 773 N.W.2d 834, 843-44 (Iowa 2009) ; State v. Seering , 701 N.W.2d 655, 666-68 (Iowa 2005). I do not agree that registration which is nonpunitive for adults becomes punitive when applied in a more lenient way to juveniles.[4]
I. No Caselaw Supports the Majority's Distinction.
The majority cites no cases supporting a constitutional distinction between registration of adult sex offenders and registration of juvenile sex offenders. There are many cases to the contrary.
A California appellate court has declined to hold that juvenile sex offender registration, as opposed to adult sex offender registration, constitutes punishment. In re J.C., 13 Cal.App.5th 1201, 221 Cal.Rptr.3d 579, 593 (2017). There, the court rejected the juvenile's argument that "children were different" and that registration of *608 juveniles could still be punishment notwithstanding a previous finding under both the State and the Federal Constitutions that registration of adults was not. Id. at 588-91 (citing In re Alva , 33 Cal.4th 254, 14 Cal.Rptr.3d 811, 92 P.3d 311, 313 (2004) ). Although the court noted juvenile identifying information was not published on the registry website, other disclosure requirements still applied to juveniles. Id. at 590-91.
Likewise, the Nebraska Supreme Court saw "no principled reason" to depart from its holding that lifetime sex offender registration was not punishment, just because the offense was committed by a juvenile. See State v. Boche , 294 Neb. 912, 885 N.W.2d 523, 531-32 (2016). It added, "Other jurisdictions which have considered the issue as applied to juveniles have reached the same conclusion." Id. at 532.
The Illinois Supreme Court similarly rejected a claim that the sex offender registry of juveniles involved punishment. In re J.W. , 204 Ill.2d 50, 272 Ill.Dec. 561, 787 N.E.2d 747, 762 (2003). The court had previously held that the registration requirements did not constitute punishment as applied to adults. See id. The court was, however, "not persuaded that requiring a juvenile sex offender to register and allowing a very limited public access to notification concerning the juvenile's status as a sex offender compels a different result." Id.
The South Carolina Supreme Court held in In re Justin B. that mandatory sex offender registration was nonpunitive, even as applied to juveniles. 419 S.C. 575, 799 S.E.2d 675, 679 (2017). According to the court,
The purpose of the sex offender registry has nothing to do with retribution, and any deterrent effect of registration derives from the availability of information, not from punishment. Instead, the purpose of the registry and the electronic monitoring requirement is to protect the public and aid law enforcement.
Id. There, the registration requirements applied equally to all offenders "convicted or declared delinquent for criminal sexual conduct with a minor in the first degree," "regardless of age." Id. at 677.
In Mississippi, the state supreme court upheld the required registration of a juvenile sex offender. L.B.C. v. Forrest Cty. Youth Ct. , --- So. 3d ----, ----, 2017 WL 5897905, at *6 (Miss. 2017) (en banc). There, the court noted that courts have no discretion regarding whether a qualified delinquent must register as a sex offender: "As long as the delinquent is fourteen years old and committed an offense that involved the use of force, the delinquent is required to register." Id. at ----, at *5. Further, there were no confidentiality distinctions between juveniles and adults who must register; the names and addresses of offending juveniles were not confidential so that they may be used for purposes of the registry. Id. The court concluded that "the purpose of the Mississippi Sex Offenders Registration law is to assist law enforcement and protect the community and vulnerable populations." Id. The court continued, "The requirement to register as a sex offender does not punish the registrant but protects the public from repeat offenses. This purpose is no less a valid concern with juvenile delinquents." Id.
In In re J.O. , the Colorado Court of Appeals found that the statutory sex offender registration of a juvenile did not amount to punishment. 383 P.3d 69, 75 (Colo. App. 2015). Noting that the juvenile could petition to be removed from the registry after successfully completing and being discharged from his sentence, the court "decline[d] to depart from Colorado cases holding that sex offender registration *609 ...-even as applied to juveniles-does not constitute punishment." Id.
From reading the majority opinion, one might think that a decision of the Maryland Court of Special Appeals supports the majority's reasoning. See In re Nick H ., 224 Md.App. 668, 123 A.3d 229 (2015). However, that case actually found that registration of juvenile sex offenders was not punitive. Id . at 250-51.
It is true that in some of the foregoing states, information about registered juvenile sex offenders is not readily available to the public. But in others, it is, just as in Iowa. See Justin B ., 799 S.E.2d at 680 ; L.B.C ., --- So. 3d at ----, 2017 WL 5897905, at *5.
I might not make the same policy choice as our legislature, but that is not the issue. As noted by the majority, "The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." Smith v. Doe , 538 U.S. 84, 105, 123 S.Ct. 1140, 1154, 155 L.Ed.2d 164 (2003).[5]
Including both adults and juveniles who commit forcible sex offenses on the publicly available sex offender registry meets the foregoing standard. I suspect Iowans don't care whether a confirmed child molester committed the offense at the age of nineteen or seventeen. If the person is living in their neighborhood, they want to know that. As I've already noted, the legislature has provided the juvenile court with discretion to remove the juvenile from the registry at the termination of the dispositional order.
II. Social Science Is an Insufficient Basis for the Majority's Distinction.
I would be more cautious than the majority in relying on social science. Whenever we do this, there is a serious danger we will get it wrong, i.e., that we will do exactly what we accuse the United States Supreme Court of having done.
The majority places the most reliance on a 2013 report issued by the Division of Criminal and Juvenile Justice Planning of the Iowa Department of Human Rights. Div. of Criminal & Juvenile Justice Planning, Iowa Dep't of Human Rights, Iowa Sex Offender Research Council Report to the Iowa General Assembly (Jan. 2013), https://humanrights.Iowa.gov/sites/default/files/media/SORC_1-15-13_Final_Report_%5B1%5D.pdf [https://web.archive.org/web/20170323233135/https://humanrights.iowa.gov/sites/default/files/media/SORC_1-15-13_Final_Report[1].pdf].
I have found this division's reports helpful in the past, but only when they are quoted and summarized accurately. That isn't what the majority has done here.
First, the majority claims that "juvenile sex offenders exhibit drastically lower recidivism rates than their adult counterparts." The report doesn't actually say this. Rather, it states, "Much research has been conducted on the differences between juvenile and adult sex offenders, some of which suggests that juveniles exhibit lower recidivism rates and respond better to sex offender treatment than adults." Id. at 12 (emphasis added).
Second, the majority includes the following quotation from the report: "[S]tudies *610 have found extremely low rates of sexual reoffending for juveniles and that sexual reoffending rates are much lower than non-sexual re-offenses even among high-risk juveniles committed to correctional facilities." The majority, however, omits a key word from the quotation-"some." The actual text reads, "Some studies have found extremely low rates of sexual reoffending for juveniles and that sexual reoffending rates are much lower than non-sexual re-offenses even among high-risk juveniles committed to correctional facilities." Id. (emphasis added) (citations omitted).
Third, according to the majority, the report indicates that multiple studies have shown no significant difference in reoffense rates between registered and nonregistered juveniles. This does seem to be a fair summary of the report. However, the report also seems to reach the same conclusion about adult registration-i.e., that it does not reduce subsequent offending. Id. at 13. The majority doesn't mention this.
Social science has a role in judicial decision-making, but that role should be very limited when we are deciding where a constitutional boundary lies. For the most part, the executive and legislative branches of government are better at evaluating and acting on social science. The report discussed by the majority was, in fact, authored by the executive branch of Iowa's government and intended to be read by the legislative branch.[6]
III. The Majority Opinion Will Have Collateral Consequences.
Lastly, today's decision that juvenile sex offender registration is punitive necessarily means that the Ex Post Facto Clause applies. See U.S. Const. art. I, § 9, cl. 3 ; Iowa Const. art. I, § 21. Therefore, in Iowa, a juvenile can no longer be subjected to a new or different registration requirement enacted after his or her underlying conviction. Prosecutors, defense lawyers, and trial judges will need to sort through this consequence of today's ruling.
For these reasons, I too would affirm the district court and the court of appeals, but I cannot join the court's opinion in its entirety.
Waterman and Zager, JJ., join this concurrence in part and dissent in part.

As noted by the majority, one key distinction is that the juvenile court has discretion to terminate the registration requirement at the termination of the dispositional order. See Iowa Code § 232.54(1)(i ) (2016). That dispositional order will terminate no later than January 2019, when T.H. turns eighteen. The juvenile court will have discretion to terminate T.H.'s registration at that point.

Justice Appel's dissent in part discusses one state where the supreme court found both adult and juvenile sex offender registration to be punitive. In re C.P ., 131 Ohio St.3d 513, 967 N.E.2d 729, 734 (2012). Like the majority, though, the dissent cites no jurisdiction where the courts have found registration to be regulatory for adults and punitive for juveniles.

The majority may well be right that juvenile sex offenders are statistically less prone than adult sex offenders to reoffend. According to a more recent survey of studies, "Recidivism rates for juveniles who commit sexual offenses are generally lower than those observed for adult sexual offenders." Christopher Lobanov-Rostovsky, U.S. Dep't of Justice, Recidivism of Juveniles Who Commit Sexual Offenses 5 (July 2015), https://www.smart.gov/pdfs/JuvenileRecidivism.pdf. (Justice Appel's dissent in part cites this particular compendium.) My point is that we are not equipped to weigh all these studies nor should we be using our interpretation of them as a basis for drawing a constitutional line in the sand.